IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

**SANTANA CLINE,**

    **Plaintiff,**

v.                                              Case No. 3:17-cv-02975

**HSBC BANK USA, N.A., et. al.,**

    **Defendants.**

**PROPOSED FINDINGS AND RECOMMENDATIONS**

On May 18, 2017, Plaintiff Santana Cline ("Cline"), proceeding *pro se*, filed a complaint against Defendants, asserting that they forged promissory notes in Plaintiff's name to secure mortgage liens on real property in order to defraud Plaintiff and obtain the property through a foreclosure sale. (ECF No. 2). Pending before the Court are Defendants' Motions to Dismiss, (ECF No. 15, 29), and Plaintiff's Motion to Strike. (ECF No. 33). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and is referred to the undersigned United States Magistrate Judge for submission of proposed findings of fact and recommendations ("PF&R") for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

For the reasons that follow, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **GRANT** Defendants' Motions to Dismiss; **DENY** Plaintiff's Motion to Strike; and **DISMISS** this case, with prejudice, and remove it from the docket of the Court.

I. **Relevant Procedural History in the Instant Action**

As stated, Cline filed her complaint and an Application to Proceed Without Prepayment of Fees and Costs on May 18, 2017. (ECF Nos. 1, 2). The complaint asserts six causes of action, including: breach of written contract; breach of implied covenant of good faith and fair dealing; conversion; invasion of privacy-misappropriation; invasion of privacy-intrusion; and violations of the federal Fair Debt Collection Practices Act. On July 18, 2017, Cline's *in forma paup*eris application was granted, and the defendants were served with process. (ECF Nos. 7, 12, 13). Defendants have now filed Motions to Dismiss under Fed. R. Civ. P. 12(b)(6). (ECF Nos. 15, 29). Although Cline was notified of her right to respond to the motions to dismiss, (ECF Nos. 17, 31), she failed to do so. Instead, she filed a Motion to Strike Defendants' pleadings. (ECF No. 33). The undersigned scheduled oral argument on the motions to dismiss, and on Cline's motion to strike. The defendants appeared at the hearing by counsel; Cline failed to attend. (ECF Nos. 34, 42). Although the docket reflects that Cline received the Order scheduling the hearing, she made no contact with the Court explaining her inability to attend or her absence from the hearing. Therefore, the motions are fully briefed, argued, and ready for resolution.

II. **Relevant Factual History**

The legal dispute between Cline and the defendants arise from Cline's 2006 purchase of a residence, her subsequent default on the mortgage loan, and her refusal to surrender the residence as promised. Because Cline's unwillingness to relinquish the residence has been the subject of numerous bankruptcy proceedings and civil actions, and has been well-documented in court orders and other judicial filings, the undersigned constructs the relevant factual history using the available court records. In determining "whether a complaint will survive a motion to dismiss, a court evaluates the complaint in

its entirety, as well as documents attached or incorporated into the complaint." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011). A court may also consider undisputed evidence integral to the complaint and matters of public record without converting a motion to dismiss into one for summary judgment. *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *Philips v. Pitt Cty. Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

In April 2006, Cline purchased a residence in Dublin, Ohio by taking out a mortgage loan in the amount of $433,200. The loan and terms of repayment were documented in a promissory note signed by Cline. To secure payment of the promissory note, Cline executed and delivered a mortgage deed on the residence, which was duly filed with the Recorder of Franklin County, Ohio. (ECF No. 15-1 at 14-15). In the ensuing months, Cline paid the first four loan installments, but then defaulted. Notwithstanding her default, Cline refused to vacate the premises.

In 2007, the lender's rights under the promissory note and mortgage deed were assigned to Defendant, HSBC Bank USA ("HSBC"). On March 13, 2007, HSBC filed a foreclosure complaint against Cline in the Court of Common Pleas of Franklin County, Ohio ("2007 foreclosure case"). (ECF No. 29-3 at 4)[1]. On January 24, 2008, the Court of Common Pleas entered an Order finding that HSBC had a valid mortgage lien on Cline's residence in Dublin, Ohio ("the Dublin house"); that Cline was in default under the terms of the mortgage; and that HSBC was awarded "the equity of redemption and dower" in and to the Dublin house. (ECF No. 15-1 at 15). The court further ordered that the Dublin

---

[1] ECF No. 29-3 has two docket stamps at the top of each page of the document. The page numbers that are clearly seen in black print on ECF No. 29-3 are the page numbers from the original bankruptcy order. Because the order was then filed as an Exhibit in this action, with a cover sheet, the page numbers in this action are stamped in blue and differ from the original order by one additional digit.

house be appraised and sold in a sheriff's foreclosure sale. (*Id.* ).

In April 2008, shortly before the scheduled sheriff's sale, Cline filed her first of many bankruptcy petitions; this one was filed in the United States Bankruptcy Court for the Southern District of Ohio and sought relief under Chapter 13 of the Bankruptcy Code. (ECF No. 29-3 at 5); *see, also, In re Cline*, 2:08-bk-53510 (Bankr. S.D. Ohio). As the filing of the petition automatically stayed the sheriff's sale, Cline was able to remain in the Dublin house. Cline's bankruptcy case was subsequently dismissed in July 2008, because she failed to present an acceptable plan for confirmation. (*Id.*).

Accordingly, the sheriff's sale was rescheduled. However, the sale was once again impeded when Cline filed a second petition for bankruptcy in the Southern District of Ohio, this time asking for relief under Chapter 7. (*Id.*); *see, also, In re Cline,* 2:08-bk-60588 (Bankr. S.D. Ohio). In this action, Cline listed the Dublin house as an asset and scheduled the mortgage loan as a secured debt. *(Id.*); *In re Cline,* 2:08-bk-60588 at Doc. 1, pgs. 8, 13. Cline filed a statement of intention to surrender the Dublin house as part of her bankruptcy plan. *In re Cline,* 2:08-bk-60588 at Doc. 4. In February 2009, Cline received a discharge of her debt. *Id.* at Doc. 20. However, she failed to surrender the Dublin house. (ECF No. 29-3 at 5). By this time, Cline had lived in the Dublin house for more than two years without making a single payment on the mortgage loan.

A third sheriff's sale was scheduled in July 2010. (ECF No. 29-3 at 5). Approximately one month before the sale, Cline filed a motion for relief from judgment in the 2007 foreclosure case and asked for a stay of the sheriff's sale. (ECF No. 15-1 at 21-22). Cline alleged in her motion that HSBC lacked standing to foreclose on the Dublin house, because the assignment of the mortgage to HSBC was fraudulent. According to Cline, the assignment document was forged. (*Id.* at 28). Cline's motions were denied as

4

untimely on June 29, 2010. (ECF No. 29-3 at 6).

On July 7, 2010, just two days before the scheduled sheriff's sale, Cline filed her third bankruptcy petition, which again provided an automatic stay of the sale. (*Id.*); *see, also*, *In re Cline,* No. 2:10-bk-58115 (Bankr. S.D. Ohio). As part of that bankruptcy proceeding, Cline filed two adversary proceedings against HSBC and others. *Cline v. HSBC, et al,* No. 2:10-ap-2482 (Bankr. S.D. Ohio); *Cline v. HSBC, et al,* No. 2:10-ap-2618 (Bankr. S.D. Ohio). In the adversary proceedings, Cline admitted that she had signed a promissory note and mortgage deed on the Dublin house, but challenged HSBC's claim that it had been assigned the rights under the note and deed. (*Id.*) Cline alleged that the assignment document produced by HSBC was fraudulent, and she asked that the mortgage be canceled and that she be awarded costs and expenses, compensatory damages, and punitive damages for HSBC's fraud. (*Id.*). Ultimately, the bankruptcy case and two adversary proceedings were dismissed. (ECF No. 29-3 at 6).

A sheriff's sale of the Dublin house was scheduled for the fourth time on May 6, 2011, but Cline again prevented it from going forward by filing another motion for relief from judgment and stay of sale in the 2007 foreclosure case. (ECF No. 15-1 at 66-93). Cline reiterated her claim that HSBC had no right or interest in the Dublin house, because the assignment was fraudulent and the assignment document was forged. (ECF No. 29-3 at 5). Cline's motion was denied as meritless, "in part because [] Cline had previously argued forgery and did not present any new evidence." (*Id.*).

One day before the sheriff's sale, Cline filed another bankruptcy action under Chapter 13 in the Southern District of Ohio, automatically staying the sale. *In re Cline,* No. 2:11-bk-54893 (Bankr. S.D. Ohio). As part of this action, Cline filed an adversary proceeding, again challenging the validity of HSBC's mortgage lien and alleging forgery

5

and fraud. *Cline v. HSBC, et al.,* No. 2:11-ap-2336 (Bankr. S.D. Ohio). The bankruptcy action was dismissed on November 8, 2011. (ECF No. 29-3 at 7). On November 6, 2012, after dismissal of the bankruptcy action was affirmed on appeal, the bankruptcy court dismissed the adversary proceeding. *See Cline v. HSBC, et al.,* No. 2:11-ap-2336 (Bankr. S.D. Ohio).

Given that four years had elapsed since the original foreclosure order, the 2007 foreclosure case was reopened to allow an updated appraisal of the Dublin house. (ECF No. 29-3 at 7). By this time, Cline had remained ensconced in the Dublin house for nearly six years without making a single mortgage payment. Once the appraisal was completed, a sheriff's sale was scheduled to take place on March 30, 2012. In view of this development, Cline again resorted to the judicial system, filing an action in the Court of Common Pleas of Franklin County, Ohio, seeking to "quiet title" to the Dublin house. Cline repeated her previously unsuccessful claims of fraud in the assignment of the mortgage to HSBC. (*Id.*). However, as a result of the lawsuit, the sheriff's sale was prevented one more time. On February 20, 2013, the Court of Common Pleas granted summary judgment to HSBC on the basis of claims and issue preclusion. The court found that Cline was attempting to re-litigate matters that were raised, or should have been raised, in the 2007 foreclosure case. (*Id.*).

Thereafter, three more proceedings were instituted by Cline in her effort to retain possession of the Dublin house: (1) a 2013 civil action in the United States District Court for the Southern District of Ohio, asserting causes of action similar to those currently pending in the instant action; (2) a 2013 civil action in the United States District Court for the Central District of California, claiming that the promissory note Cline signed was fraudulent and alleging additional claims similar to those in this case; and (3) a 2015

6

Chapter 11 bankruptcy proceeding in Nevada. Ultimately, all three of these actions were dismissed on the basis of *res judicata*—issue and claim preclusion.

Specifically, in the 2013 Southern District of Ohio action, the district court noted Cline's contention that HSBC had no legitimate interest in the Dublin house, because the assignment of the mortgage lien was fraudulent. *See Cline v. Mortgage Electronic Registration Services, Inc., et al.,* Case No. 2:13-cv-00401-JLG-MRA, 2013 WL 6687257 (S.D. Ohio Dec. 18, 2013). The court explicitly rejected that contention, emphasizing the 2008 order of foreclosure, which "specifically found that the mortgage and note were duly recorded and validly assigned to HSBC and that Cline was in default, with over $430,000 plus interest due on the note." *Id.* at *2. After conducting a review of Cline's numerous legal actions pertaining to the Dublin house, the district court concluded that Cline was prohibited by the doctrines of issue and claim preclusion from re-litigating matters either raised, or that could have been raised, in the 2007 foreclosure action. *Id.* at *5. Based upon these doctrines and other deficiencies of the complaint, the district court dismissed the case. The court concurrently notified Cline that sanctions against her would be considered if she filed post-judgment motions that were "frivolous and brought for the purposes of delay, harassment, or imposing needless cost on defendants." *Id.* at *6.

In the Central District of California action, the district court likewise granted HSBC's motion to dismiss Cline's complaint, which asserted claims of conspiracy, unjust enrichment, violations of the federal Fair Debt Collection Practices Act, civil conspiracy to commit fraud, common law fraud, harassment/abuse, false or misleading representations, unfair practices, and intentional and negligent misrepresentation of facts. *See Cline v. CBSK, et al.,* Case No. SACV 13-1720-JLS, 2015 WL 1005520 (C.D. Cal. Mar. 5, 2015). Yet again, Cline alleged a conspiracy by the defendants to fraudulently

7

assign the mortgage lien on the Dublin house to HSBC. She reiterated that HSBC had no right to foreclose on the property, because it had forged the assignment document. In its motion to dismiss, HSBC argued that this case was the <u>ninth</u> lawsuit filed by Cline challenging HSBC's right to foreclose and that all of the matters raised had previously been adjudicated in HSBC's favor; thereby, entitling HSBC to the bar of *res judicata*. Comparing the 2013 complaint Cline filed in the Southern District of Ohio with the complaint pending in the Central District of California, the district court considered whether there was identity of claims and parties and whether a final judgment was entered in the Ohio litigation that triggered the application of *res judicata*. *Id.* at *4-6. The district court found that both complaints arose from the same "transactional nucleus of facts;" that HSBC was named by Cline in both cases; and that a final judgment was entered by the Ohio District Court. *Id.* Therefore, the California district court dismissed the complaint at bar on the ground of *res judicata*.

During a March 15, 2016 hearing in the Nevada bankruptcy action, the court ruled from the bench, making a finding that Cline had improperly included the Dublin house in her list of assets. (ECF No. 15-1 at 178-79). The court pointed out that the foreclosure order entered eight years earlier by the Common Pleas Court of Franklin County, Ohio had extinguished any interest Cline had in the Dublin house. Moreover, the court found that Cline had filed the Nevada bankruptcy proceeding in bad faith as part of a scheme to delay, hinder, and defraud creditors, as evidenced, *inter alia*, by: "her numerous other bankruptcy filings, her failure to make a payment on the home since 2006 while she continued to occupy it, [and] the multiple state and federal court matters initiated by [her]." (*Id.* at 179). Consequently, by written order entered April 7, 2016, the court barred Cline "from filing another bankruptcy anywhere in the United States for one calendar year

8

from the date of the entry of this order." *Id.*

On March 15, 2016, the same day that the Nevada bankruptcy judge ruled that Cline had no legal right to the Dublin house, Cline executed a quitclaim deed, transferring her ostensible interest in the Dublin house to her stepfather, Timothy Dials, in exchange for five dollars and subject to "[c]urrent taxes and other assessments, reservations by patents, and all rights of way, encumbrances, liens, covenants, conditions[,] restrictions, obligations, and liabilities as may appear of record." (ECF No. 15-1 at 182). Dials promptly filed a Chapter 13 bankruptcy petition in the United States Bankruptcy Court for the Southern District of West Virginia. *See In re Dials,* Case No. 6:16-bk-60085 (Bankr. S.D.W. Va). In his filing, Dials claimed the Dublin house as a $600,000 asset and failed to disclose HSBC's mortgage lien as a debt. HSBC learned of the bankruptcy action and filed an objection, indicating that the mortgage loan on the Dublin house was now substantially in arrears; with interest, HSBC was due a total of $909,029.43. Defendants Reisenfeld & Associates and Christopher Dawson represented HSBC in this matter. On HSBC's behalf, they filed a motion for relief from the automatic stay.

Dials later converted the proceeding to a Chapter 7 bankruptcy and filed a motion for sanctions against HSBC, arguing that the promissory note underlying the mortgage deed had been canceled. Dials subsequently filed an adversary proceeding, resurrecting his stepdaughter's claims that various signatures on the original note and assignment were forged; that the loan had been canceled; that HSBC's lien was fraudulent; and HSBC had no claim to the Dublin house. *See Dials v. HSBC Bank USA, N.A., et al,* 6:17-ap-6000 (Bankr. S.D.W. Va.).

In April and May 2017, United States Bankruptcy Judge Frank W. Volk held evidentiary hearings on outstanding motions and objections. On September 30, 2017,

9

Chief Judge Volk issued an order, finding no merit to Dials's motion and adversary proceeding. (ECF No. 29-3 at 2-28). Chief Judge Volk thoroughly reviewed the extensive litigation history surrounding the Dublin house and found Dials's forgery argument to be barred by *res judicata* and his standing challenge to HSBC's foreclosure right to be frivolous. Furthermore, Chief Judge Volk concluded that Dials, and his predecessor, Cline, had acted in bad faith by filing more than *twelve* legal proceedings in an effort to thwart the sale of the property and interfere with HSBC's right to recover the house. Chief Judge Volk stated: "This is the paradigmatic case for a judicial estoppel finding, namely, one where parties engage in abusive and endless litigation in the hopes of buying time, clogging a busy judicial system, and, in the process, compromising our state and federal tribunals' abilities to justly and rapidly adjudicate real controversies between parties with viable claims and defenses." (*Id.* at 23). Chief Judge Volk added that he was not the first judicial officer to be concerned about the abuse of courts displayed by Cline and Dials, noting that either Cline or Dials had occupied the Dublin house since 2006, without making a single mortgage payment in years. (*Id.* at n. 5). Indeed, by the time Chief Judge Volk entered his order, Cline and Dials had been squatters in the Dublin house (valued by Dials at $600,000) for a combined period of more than 11 years, living there *entirely free*.[2]

In addition to Dials's 2016/2017 bankruptcy and adversary proceedings, HSBC found itself named in additional litigation instituted by Cline. On May 15, 2017, she filed

---

[2] Cline did not live in the Dublin house the entire eleven years, as she was incarcerated for some period of time beginning in 2007, after being convicted in the United States District Court for the Eastern District of Virginia of the felony offense of unlawful trafficking in false authentication features on a false identification document in violation of 18 U.S.C. § 1028. *United States v. Cline,* Case No. 1:07-cv-00133-GBL-1 (E.D. Va. 2007). Nevertheless, Cline claimed possession of the Dublin house for a continuous period between April 2006 and March 2016, and Dials claimed possession of the house beginning in March 2016.

a complaint in the United States District Court of the Southern District of New York, styled *Cline v. HSBC Bank USA, N.A.; Reisenfeld & Associates; and Christopher Dawson,* Case No. 17-CV-3653 (CM) (S.D.N.Y.). Of significance, the complaint filed in the New York District Court was virtually identical to the complaint filed in this Court, with two notable exceptions. First, Cline alleged in the New York complaint that she was a resident of Powell, Ohio, and venue was proper in New York because all of the events giving rise to her claims occurred in the Southern District of New York. Notwithstanding these representations, in the complaint Cline filed in this court **three days later**, she claimed that she lived in Las Vegas, Nevada and Hurricane, West Virginia and "all of the events giving rise to Plaintiff's claims occurred in this judicial district and local Bankruptcy Court in Charleston, WV." (ECF No. 2 at 3). The second difference between the two complaints is that Cline revived her federal Fair Debt Collection Practices Act claim in the instant action, and omitted it in the New York complaint.

On May 17, 2017, the presiding District Judge in New York entered an Order transferring Cline's complaint to the Southern District of Ohio, noting that Cline had "extensively litigated matters relating to the mortgage on the Ohio property" in Ohio and failed to demonstrate a basis for venue in New York. *Cline,* Case No. 17-CV-3653 at ECF No. 3. Shortly after the case was transferred to Ohio, Cline voluntarily dismissed it. *See Cline v. HSBC Bank USA, N.A.; Reisenfeld & Associates; and Christopher Dawson,* Case No. 2:17-CV-0049 at ECF No. 5. However, she continues to pursue her claims in this Court.

### III. Standard of Review

Defendants request dismissal of Cline's complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for which relief may be granted. A complaint

11

fails to state a claim when, viewing the factual allegations as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp v. Twombly,* 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). The Supreme Court further explained the "plausibility" standard in *Iqbal*, stating:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal,* 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal citations omitted). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal,* 556 U.S. at 679. Determining whether a complaint states a facially plausible claim for relief is a "context-specific task that requires the court to draw on its judicial experience and common sense." *Id.* (citing *Iqbal v. Hasty,* 490 F.3d 143, 157–158 (2nd Cir. 2007)).

In deciding a Rule 12(b) motion, the court must accept as true all of the well-pleaded factual allegations contained in the complaint. *Erickson v. Pardus,* 551 U.S. 89 (2007). In contrast, the court is not required to accept the legitimacy of legal conclusions. *Iqbal,* 556 U.S. at 678. To survive a motion to dismiss, a complaint must plead both a factual and legal basis for relief. *Id.* ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to establish a facially plausible complaint). Courts are required to liberally construe *pro se* complaints, such as

the one filed in this action. *Erickson,* 551 U.S. at 94. However, even under this less stringent standard, the complaint still must contain sufficient factual allegations to support a valid legal cause of action. *Bass v. E.I. Dupont de Nemours & Co.,* 324 F.3d 761, 765 (4th Cir. 2003). The court may not rewrite the pleading to include claims that were never presented, *Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir. 1998); construct the plaintiff's legal arguments for him, *Small v. Endicott,* 998 F.2d 411, 417-18 (7th Cir. 1993); or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985). A Rule 12(b)(6) motion should be granted only "'where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.'" *Hartmann v. Calif. Dept. of Corr. & Rehab.,* 707 F.3d 1114, 1122 (9th Cir. 2013).

## IV. Discussion

The complaint includes six causes of action and names Reisenfeld & Associates, Christopher Dawson, and HSBC as defendants. Cline does not specify which claims apply to which defendants, so the undersigned will assume for the purposes of this PF&R that Cline intended to assert all causes of action against each defendant.

### A. Motions to Dismiss

#### 1. *Reisenfeld & Associates and Christopher Dawson*

Reisenfeld & Associates and Christopher Dawson (the "Reisenfeld defendants") argue in their motion that the complaint should be dismissed for failure to state a claim, because "no recognizable claims" have been asserted against them. (ECF No. 16 at 8). The undersigned agrees that Cline has stated no plausible claim against the Reisenfeld defendants for the simple reason that the complaint includes no specific factual allegations against them. Counts I and II of the complaint allege breach of contract and

13

breach of good faith and fair dealing. The Reisenfeld defendants assert, and Plaintiff does not dispute, that no contractual relationship ever existed between them. (ECF No. 16 at 8-9). The Reisenfeld defendants further assert, and Plaintiff does not dispute, that the only role the Reisenfeld defendants played in the Dublin house's mortgage saga was to represent HSBC's interests in the bankruptcy proceeding initiated by Cline's stepfather, Timothy Dials. The official court records support the Reisenfeld defendants' position, while the complaint lacks any facts to the contrary. Therefore, Counts I and II should be dismissed.

Count III of the complaint alleges conversion; however, Cline asserts only vague and conclusory allegations to support the claim. The Reisenfeld defendants assert, and Plaintiff does not dispute, that the Reisenfeld defendants never exerted control over any property belonging to Cline, an element that is integral to establishing a claim of conversion. The official court records support the Reisenfeld defendants' statements, while the complaint lacks any facts to the contrary. Therefore, Count III should be dismissed.

Counts IV and V of the complaint claim allege invasions of Cline's privacy by misappropriation of her name and intrusion into her personal affairs. As with the other Counts, Cline supplies no factual recitation to demonstrate a plausible claim of invasion of privacy against the Reisenfeld defendants. While Cline does accuse someone of forging her name on various documents, the documents mentioned in the complaint pre-date the involvement of the Reisenfeld defendants in the mortgage saga. As Counts IV and V are supported solely by vague and conclusory allegations, they must be dismissed.

Finally, in Count VI of the complaint, Cline alleges violations of the Fair Debt Collections Practices Act. Cline identifies no debt that was pursued by the Reisenfeld

defendants, nor does she elucidate the actions taken by the Reisenfeld defendants that violated the Act. Given that the Count VI is entirely devoid of any factual allegations to demonstrate a plausible claim against the Reisenfeld defendants, Count VI should be dismissed.

Accordingly, the undersigned **FINDS** that Cline's complaint fails to state any plausible claim against the Reisenfeld defendants and should be dismissed against them.

### *2. HSBC*

In addition to asserting that the complaint lacks factual allegations sufficient to state a plausible claim, HSBC moves to dismiss the complaint on the grounds of *res judicata* and collateral estoppel. The undersigned agrees with HSBC that these doctrines preclude Cline's complaint against HSBC. Under the doctrine of *res judicata*, or claim preclusion:

> a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. By precluding parties in a subsequent proceeding from raising claims that were or could have been raised in a prior proceeding, res judicata … encourages reliance on judicial decisions, bars vexatious litigation, and frees the courts to resolve other disputes. For the doctrine of *res judicata* to be applicable, there must be: (1) a final judgment on the merits in a prior suit; (2) an identity of the cause of action in both the earlier and the later suit; and (3) an identity of parties or their privies in the two suits.

*Pueschel v. United States*, 369 F.3d 345, 354–55 (4th Cir. 2004) (internal quotations, markings, and citations omitted). "The doctrine of 'collateral estoppel' or 'issue preclusion,' … is a subset of the *res judicata* genre. *In re Microsoft Corp. Antitrust Litig.*, 355 F.3d 322, 326 (4th Cir. 2004). The Fourth Circuit explained in *In re Microsoft*:

> Applying collateral estoppel forecloses the relitigation of issues of fact or law that are identical to issues which have been actually determined and necessarily decided in prior litigation in which the party against whom [collateral estoppel] is asserted had a full and fair opportunity to litigate. To

15

>apply collateral estoppel or issue preclusion to an issue or fact, the proponent must demonstrate that (1) the issue or fact is identical to the one previously litigated; (2) the issue or fact was actually resolved in the prior proceeding; (3) the issue or fact was critical and necessary to the judgment in the prior proceeding; (4) the judgment in the prior proceeding is final and valid; and (5) the party to be foreclosed by the prior resolution of the issue or fact had a full and fair opportunity to litigate the issue or fact in the prior proceeding.

*Id.*

As the factual history demonstrates, Cline has raised the same issues asserted in this case against HSBC in numerous other actions and forums; including, cases in the Court of Common Pleas of Franklin County, Ohio; the United States Bankruptcy Courts for the District of Nevada and the Southern District of West Virginia; and the United States District Courts for the Central District of California, the Southern District of New York, and the Southern District of Ohio. These courts have considered "the same transactional nucleus of facts" surrounding the Dublin house and mortgage lien, the same claims of fraud and forgery, and the same alleged illegal debt collection practices. More than one court has issued a final order finding Cline's complaint to be precluded by claim and issue preclusion. *Cline,* 2013 WL 6687257, at *5; *Cline,* 2015 WL 1005520, at *4-5; *see, also, In re Dials,* 575 B.R. at 148-51.

Regardless of how Cline frames her causes of action here, all of her claims stem from the same 2006 mortgage lien on the Dublin house. The record is clear that the Common Pleas Court of Franklin County, Ohio issued an order in 2008, finding that HSBC had a valid mortgage lien on the Dublin house; that Cline had defaulted on the lien; that Cline's rights to the Dublin house were ***foreclosed and extinguished***; and that HSBC was free to sell the property to satisfy Cline's debt. The voluminous litigation instigated by Cline in the wake of the 2007 foreclosure case has merely rehashed the 2008 order in one form or another. Therefore, the undersigned **FINDS** that Cline's complaint

is barred by the doctrines of *res judicata* and collateral estoppel.

### B. Motion to Strike

Cline's Motion to Strike provides no supportable factual or legal basis upon which this Court should strike Defendants' filings. In the motion, Cline continues to make conclusory and accusatory statements that are belied by the facts. As other judicial officers have noted, Cline's repetitive use of the court system to aid her in the wrongful occupation of a luxury home is troubling. Despite having no success in her many actions, Cline and her family members have lived, rent-free, for more than a decade in a residence in which they have no legal right, title, or interest. Clearly, Cline is adept at forum shopping, and she has no qualms—and apparently no fear of repercussion—about supplying state and federal courts with untruths and misrepresentations. Her motion to strike is only one in a long list of frivolous and unsubstantiated judicial filings. Therefore, the undersigned **FINDS** no merit in Cline's Motion to Strike and recommends it denial.

### V. Proposal and Recommendations

For the reasons stated, the undersigned respectfully **PROPOSES** that the presiding District Judge confirm and accept the foregoing findings and **RECOMMENDS** that the Court **GRANT** Defendants' Motions to Dismiss; **DENY** Plaintiff's Motion to Strike; **DISMISS** this case, with prejudice; and remove it from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days, and three additional days if this document is received by mail, from the filing date of this PF&R within which to file with the Clerk of this Court,

specific written objections, identifying the portions of the PF&R to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding district judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to Judge Chambers and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Plaintiff, counsel of record, and any unrepresented party.

**FILED:** December 12, 2017

_____
Cheryl A. Eifert
United States Magistrate Judge