# IN THE UNITED STATES DISTRICT COURT FOR
# THE SOUTHERN DISTRICT OF WEST VIRGINIA

## HUNTINGTON DIVISION

SANTANA CLINE,

        Plaintiff,

v.                                CIVIL ACTION NO.  3:17-cv-02975

HSBC BANK USA, N.A., et. al.,

        Defendants.

## MEMORANDUM OPINION AND ORDER

Proceeding *pro se*, Plaintiff Santana Cline ("Cline" or "Plaintiff"), filed suit in this Court on May 18, 2017. Plaintiff asserted a variety of claims, all touching upon the alleged malfeasance by HSBC Bank USA, N.A. ("HSBC"), Reisenfeld & Associates ("Reisenfeld"), and Christopher A. Dawson ("Dawson") (all three jointly referred to as "Defendants") regarding a promissory note in Plaintiff's name, and the foreclosure of her property. Specifically, Plaintiff claims Defendants forged her name on a promissory note, and that they used that note to defraud her by securing mortgage liens on the real property, which Defendants allegedly sought to obtain via a foreclosure sale. *Compl.*, ECF No. 2. Per standing order, the Court referred this case to Magistrate Judge Eifert for Proposed Findings and Recommendations ("PF&R"). *Standing Order*, ECF No. 4.

On December 12, 2017, Magistrate Judge Eifert issued a PF&R that addressed both Defendants' Motions to Dismiss (ECF No. 15 & 29) and Plaintiff's Motion to Strike (ECF No. 33). Defendants moved for dismissal under Rule 12(b)(6), claiming that Plaintiff has failed to state a claim, and that to the extent she has stated a claim, her claims are *res judicata*. *Reisenfeld Mem. in Supp. of Mot. to Dismiss*, ECF No. 16, at 8-17; *HSBC Mem. in Supp. of Mot. to Dismiss*, ECF

No. 30, at 4. Plaintiff requested the striking of "all Defendant's [sic] pleadings" based, generally, upon her contention that the pleadings contained all manner of falsehoods. Magistrate Judge Eifert recommends that this Court grant Defendants' Motions to Dismiss, deny Plaintiff's Motion to Strike, and dismiss this case. *PF&R*, ECF No. 43, at 17.

On December 29, 2017, Plaintiff filed objections to this PF&R.[1] *Pl.'s Obj. to PF&R*, ECF No. 44. As permitted under Fed. R. Civ. P. 72(b)(2), Reisenfeld and Dawson responded to Plaintiff's objections. *Reisenfeld Resp. to Pl.'s Obj.*, ECF No. 45. Having reviewed Plaintiff's objections under a *de novo* review, the Court does not agree with them.

As explained below, the Court **ADOPTS** Magistrate Judge Eifert's findings and recommendations in the PF&R (ECF No. 43), to the extent they are not contradicted by this Memorandum Opinion and Order. Accordingly, the Court **GRANTS** Defendants' Motions to Dismiss (ECF Nos. 15 & 29), and **DENIES** Plaintiff's Motion to Strike (ECF No. 33).

## I.     Background

The background of this case reads as an extended, multi-jurisdictional attempt by Plaintiff to litigate her way toward a fix to a persistently held, perceived wrong. Although this Court first

---

[1]     The Court must comment upon Plaintiff's filing. Plaintiff's Objection to PF&R is written in a largely argumentative and confusing manner. Plaintiff fades from baseless, conclusory accusations to supported legal arguments, and back again. This makes it difficult for the Court to separate the wheat from the chaff, and determine Plaintiff's sincere objections and concerns about the PF&R.

It appears that Plaintiff challenges Magistrate Judge Eifert's conclusions regarding Defendant HSBC's Motion to Dismiss. *Pl.'s Obj. to PF&R*, at 4-6. However, Plaintiff does not mention her own Motion to Strike, which Magistrate Judge Eifert has recommended be denied. Instead, Plaintiff requests that the PF&R "be stricken from the record." The Court finds no support to strike Magistrate Judge Eifert's PF&R. Further, the Court construes the absence of discussion regarding Magistrate Judge Eifert's recommendation to deny the Motion to Strike, as an indication that Plaintiff does not have an objection to that portion of the PF&R. Therefore, the Court will adopt Magistrate Judge Eifert's findings regarding Plaintiff's Motion to Strike, and will deny that motion. Even if objections had been made, this Court has reviewed the Motion to Strike and finds that there is no support in the record for granting that motion.

encountered the facts at the heart of this matter in May 2017, Plaintiff has been crisscrossing the country for nearly a decade, airing her grievances before a litany of courts.[2]

This saga began with the purchase of a house in Dublin, Ohio ("Dublin House"). *PF&R*, at 2.[3] In April 2006, Cline purchased the residence, taking out a mortgage loan for $433,200, by executing a promissory note. *Id.* at 3. To secure the promissory note, Cline also executed and delivered a mortgage deed on the residence, which was subsequently recorded by the Recorder of Franklin County, Ohio. *Id.* Although she made the first four payments, as laid out in the promissory note and its addenda, Cline soon began missing payments and defaulted. *Id.* But Cline did not vacate the property.

In 2007, shortly after having been assigned lender's rights under the promissory note and mortgage deed, HSBC initiated the first of many judicial actions between these parties. On March 13, 2007, HSBC filed a foreclosure complaint against Cline in the Court of Common Pleas of

---

[2]     Generally, on a motion to dismiss, a court should review only the facts alleged in the complaint. *Anand v. Ocwen Loan Serv., LLC*, 754 F.3d 195, 198 (4th Cir. 2014). However, a court may consider extrinsic "documents attached to [either] a complaint or motion to dismiss 'so long as they are integral to the complaint and authentic'" *Id.* (quoting *Philips v. Pitt Cty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)). Additionally, a court may "take judicial note of matters of public record." *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009); *see also Corbett v. Duerring*, 780 F.Supp. 486, 492 (S.D.W. Va. 2011). The consideration of these documents does not convert the motion into one for summary judgment. *Id.* Accordingly, the Court, similar to the Magistrate Judge, as considered the voluminous judicial records attached to the Motions to Dismiss. *See Ex. 1 to Compl.*, ECF No. 2-1; *Ex. A – H to Reisenfeld Mot. to Dismiss*, ECF No. 15-1; *Ex A, B, & C to HSBC Mot. to Dismiss*, ECF Nos. 29-1, 29-2, 29-3. The Court finds these documents properly reflect the litigation history arising out of the substantially same nucleus of operative facts that confronts the Court in this matter. This case does not lend itself to a piecemeal description of a discrete chapter in the overall story behind this action and the legal arguments made before this Court. Therefore, in order to consider properly the *res judicata* arguments at issue, the Court finds consideration of past litigation necessary to the appropriate dispensation of the pending Motions to Dismiss.

[3]     Due to the lengthy nature of the proceedings and litigation prior to this case, the Court cites to the factual recounting as compiled by the Magistrate Judge. The Court has reviewed the material cited by the Magistrate Judge, but has cited to the PF&R to allow a comprehensive, but less intrusive, format for citation.

Franklin County, Ohio ("2007 Foreclosure Action"). *Id.* The Court of Common Pleas entered an order finding that HSBC had a valid mortgage lien on Plaintiff's Dublin House. *Id.* The court also found that Plaintiff was in default according to the terms of the promissory note, and awarded HSBC "the equity of redemption and dower" in the Dublin House. *Id.* To permit a quick liquidation of the asset, the court ordered an appraisal and sale in a sheriff's foreclosure sale. *Id.* 3-4.

However, in April 2008, before the sheriff's sale could take place, Cline filed her first of five bankruptcy actions. Filed under Chapter 13 of the Bankruptcy Code, and in the United States Bankruptcy Court for the Southern District of Ohio, the petition automatically stayed the sheriff's sale. *Id.* at 4. The stay permitted Cline to remain in the Dublin House. However, the court dismissed the bankruptcy petition in July 2008 based upon the failure of Cline to present an acceptable plan for confirmation. *Id.* Since the dismissal removed the stay, the sheriff's sale was rescheduled. *Id.*

But the sale would, once again, not happen. Cline filed her second bankruptcy petition in the same court as her first. This time, Cline petitioned under Chapter 7 of the Bankruptcy Code. *Id.* In her filings, Cline listed the Dublin House as an asset and scheduled the mortgage loan as a secured debt. *Id.* Importantly, Cline filed a statement of intention to surrender the Dublin House under the bankruptcy plan. *Id.* Unlike in her first bankruptcy, Cline received a discharge of her debt in February 2009. *Id.* Despite stating that she would vacate the property as part of the granted bankruptcy, Cline did not leave the Dublin House. Instead, she continued to live there, payment-free. *Id.*

After the debt discharge, a third sheriff's sale was scheduled. *Id.* However, in May 2010, roughly a month before the sheriff's sale was to take place, Cline filed a motion for relief from the 2007 Foreclosure Action judgment in the Court of Common Pleas in Franklin County, Ohio, and asked the court to stay the sale. *Id.* In that motion, Cline, echoing the allegations made in this

matter, claimed that HSBC lacked standing to foreclose upon the Dublin House because the assignment of the mortgage was fraudulent. *Id.* Regardless of Cline's assertions, on June 29, 2010, the court denied her motion as untimely. *Id.*, 4-5.

On July 7, 2010, repeating a so-far successful maneuver, Cline filed yet another bankruptcy petition, her third. *Id.* at 5. This petition, filed two days before the sheriff's sale, automatically stayed that sale. *Id.* As part of this third bankruptcy, Cline filed two adversary proceedings. *Cline v. HSBC, et al*, No. 2:10-ap-2482 (Bankr. S.D. Ohio); *Cline v. HSBC, et al*, No. 2:10-ap-2618 (Bankr. S.D. Ohio). In the adversary proceedings, Cline admitted signing the promissory note and mortgage deed on the Dublin House, however, Cline contended that HSBC's assignment was fraudulent. *Id.* This was the second time Cline had implored a court to review the authenticity of the mortgage assignment. As part of this effort, Cline requested that the Ohio bankruptcy court cancel the mortgage. *Id.* And Cline claimed that, due to HSBC's fraud, she should also be awarded costs, and both compensatory and punitive damages. *Id.* The court apparently disagreed, however, and dismissed the adversary proceedings.

Having scheduled and canceled three sales, the fourth attempt to conduct the sheriff's sale was set for May 6, 2011. True to form, Cline once again filed another motion for relief from judgment and stay of sale in the 2007 Foreclosure Action. *PF&R*, at 5. In that motion, Cline repeated her claim that HSBC had no legal interest in the Dublin House, due to the allegedly fraudulent assignment. *Id.* But the court found that Cline has sowed this ground before, "and did not present any new evidence" to support her claims. *Ex. C to HSBC's Mot. to Dismiss*, ECF No. 29-2, at 6. Although the court denied the motion as meritless, it delayed the sheriff's sale, and forced a fifth scheduled date. *PF&R*, at 5.

One day before that fifth date for the sheriff's sale, Cline filed her fourth bankruptcy action. *Id.* She returned to the Bankruptcy Court for the Southern District of Ohio, filing under Chapter 13. *In re Cline*, No. 2:11-bk-5493 (Bankr. S.D. Ohio). Of course, the automatic stay prevented the impending sale of the Dublin House. *Id.* In that action, Cline filed another adversary proceeding, which reiterated her contentions that the HSBC assignment was fraudulent and forged. *Cline v. HSBC*, No. 2:11-ap-2336 (Bankr. S.D. Ohio). Both the adversary proceedings and the bankruptcy were dismissed.

A sixth attempt was made at conducting the sheriff's sale; this time it was set for March 30, 2012. *PF&R*, at 6. For nearly six years, Cline had remained in the Dublin House, without making payments. Instead of allowing the sale to continue, Cline filed yet another judicial action. This time, falling back upon the Court of Common Pleas of Franklin County, Ohio, she brought a "quiet title" action for the Dublin House. *Id*. She based the action upon the same allegations of a fraudulent and forged assignment. *Id.* Granting summary judgment in favor of HSBC on Cline's claims, the court found that claim and issue preclusion barred Cline's attempt at re-litigating matters that had been, or should have been raised, during the 2007 Foreclosure Action. *Id.*

But this did not cease Cline's attempt to litigate the issue. In 2013, Cline filed a civil action in the District Court for the Southern District of Ohio. *Cline v. Mortg. Elec. Registration Sys., Inc.*, No. 2:13-cv-401, 2013 WL 6687257 (S.D. Ohio Dec. 18, 2013). Cline again relied upon her refrain that HSBC's mortgage assignment was fraudulent and forged. *Id.* at *5. Further, she asserted claims similar to those she has brought before this Court. *Id.* at *1. But the court rejected Cline's arguments. *Id.* *2. Focusing upon the 2007 Foreclosure Action, the court noted that the Court of Common Pleas had found that the mortgage was properly recorded and validly assigned to HSBC, and that Cline had defaulted. *Id.*

Ultimately, the district court dismissed Cline's claims. *Id.* at \*6. The court found that multiple legal frameworks required the dismissal of Cline's complaint. Relevantly, the court found that claim and issue preclusion "prevent this Court from re-examining the issues resolved on summary judgment by the state court in the foreclosure action and from relitigating the claims that were raised or could have been raised." *Id.* at \*5.

Roughly six months after she filed the civil action in the Southern District of Ohio, Cline filed another civil action, but this time her complaint traveled across the country. On November 1, 2013, Cline filed a complaint in the Central District of California, making similar allegations to what she has made in this case. *Cline v. CBSK*, No. SACV 13-1720-JLS(JPRx), 2015 WL 1005520, at \*1-2 (C.D. Cal. Mar. 5, 2015). Again, Cline argued that HSBC had benefited from a fraudulent assignment of the mortgage on the Dublin House, and that the foreclosure sale should be invalidated upon this ground. *Id.* at \*2. However, the court found that *res judicata* barred the suit. *Id.* at \*6. According to the court, the complaint filed in the District Court for the Southern District of Ohio in 2013 arose from the same "transactional nucleus of facts." *Id.* at \*4. Cline, said the court, had already addressed the same claims, between the same parties, and the Southern District of Ohio court had reached a final judgment on the merits. *Id.* at \*6. Based upon that, the court granted HSBC's motion to dismiss. *Id.*

In the same year that the California federal court dismissed her complaint, Cline turned back to the protections offered by the bankruptcy code. She filed a proceeding under Chapter 11 in the Bankruptcy Court for the District of Nevada, constituting her fifth bankruptcy action. *PF&R*, at 6-7. The bankruptcy court found that Cline had improperly included the Dublin House in her list of assets. *Id.* at 8. The court noted that the 2007 Foreclosure Action had extinguished any interest Cline held in the Dublin House. *Id*. Further, the bankruptcy court found that Cline had

filed for bankruptcy in bad faith in an effort to "delay, hinder, and defraud creditors." *Ex G to Reisenfeld Mot. to Dismiss*, ECF No. 15-1, at 178-79. Consequently, the court barred Cline "from filing another bankruptcy anywhere in the United States for one calendar year." *Id.* at 179.

On same day that the Nevada bankruptcy judge found that Cline had no interest in the Dublin House, Cline brought the Dublin House dispute to West Virginia. Cline executed a quitclaim deed, transferring any interest she may have had to her stepfather, Timothy Dials ("Dials"), who lives in Scott Depot, WV. *PF&R*, at 9; *Ex H to Reisenfeld Mot. to Dismiss*, ECF No. 15-1, at 181-82. In exchange, Dials reportedly gave Cline five dollars. *Id.* According to the quitclaim deed, the transfer was made subject to any encumbrances, restrictions, liabilities, or liens. *Id.*

Soon thereafter, Dials filed a Chapter 13 bankruptcy petition in the Bankruptcy Court for the Southern District of West Virginia. *See In re Dials*, No. 6:16-bk-60085, 575 B.R. 137 (Bankr. S.D.W. Va. 2017). In the filing, Dials listed the Dublin House as an asset valued at $600,000, but failed to disclose HSBC's mortgage lien as a debt. *Id.* at 137. After discovering the bankruptcy action, HSBC filed an objection stating its interest, and notified the Court that the mortgage had long been in default. *Id.* Defendants Reisenfeld and Dawson represented HSBC in those bankruptcy proceedings, and filed motion for relief from the automatic stay on HSBC's behalf. *Id.; PF&R*, at 10.

After converting the proceeding to a Chapter 7 bankruptcy, Dials argued that the court should issue sanctions against HSBC because the promissory note underlying the mortgage deed had been canceled. *Id.* at 143-44. He then filed an adversary proceeding, making the same claims as Cline, his stepdaughter, had made over the years. Dials argued that signatures on the promissory

note and mortgage assignment had been forged, that the loan had been canceled, that HSBC had no interest in the Dublin House, and that the lien was fraudulent. *See id.* at 145-46.

After holding evidentiary hearings earlier in the year, on September 30, 2017, Chief Judge Frank Volk issued an order finding no merits in either Dials' sanction motion or adversary proceedings. *Id.* at 151, 153-54. Chief Judge Volk reviewed the extensive litigation history between these parties, regarding the same nucleus of operative facts. Like the Nevada bankruptcy judge had determined before, Chief Judge Volk found that Cline and Dials had acted in bad faith to thwart the sale of the property. *Id.* at 150-51 n.5.

Despite Dials' involvement and claimed ownership of the Dublin House, Cline continued her multi-state judicial tour. In 2017, Cline filed another complaint against HSBC, this time in the United States District Court for the Southern District of New York. *Cline v. HSBC Bank USA, N.A.; Reisenfeld & Associates; and Christopher Dawson*, No. 17-CV-3653 (CM) (S.D.N.Y). The District Judge presiding over Cline's New York action transferred Cline's complaint to the Southern District of Ohio. *PF&R*, at 11. The judge found that Cline had failed to establish proper venue in New York, and that Cline had "extensively litigated matters relating to the mortgage on the Ohio property" in Ohio courts. *Id.* But, before the court had an opportunity to adjudicate the matter, Cline voluntarily dismissed the suit in the Southern District of Ohio. *Id.*; *Cline v. HSBC Bank USA, N.A.*; *Reisenfeld & Associates; and Christopher Dawson*, No. 2:17-CV-49 (S.D. Ohio).

With two exceptions, the complaint filed in the New York federal court mirrored the one in this case, the former being filed just three days before the latter. The first difference concerned Cline's residence. *Id.* The complaint in New York claimed that Cline was a resident of Powell, Ohio, and that venue was proper in New York because all of the events giving rise to her claims occurred in the Southern District of New York. *Id.* However the complaint filed with this Court,

claimed that Cline resided "primarily 1and [sic] does business out of Las Vegas, Nevada, as well as Hurricane, West Virginia – where she's originally from." *Compl.*, at 2. Additionally, Cline also asserted in her complaint in this case that "all of the events giving rise to Plaintiff's claims occurred in this judicial district and local Bankruptcy Court in Charleston, WV." *Id.* at 3. The second difference between the complaints concerned Cline's revived Fair Debt Collection Practices Act claim. Although she had neglected to assert the claim in New York, she did assert the claim before this Court. *Id.* at 8-11; *PF&R*, at 11.

This long line of litigious forays leads to the current action before this Court. Plaintiff initiated this action by filing a complaint on May 18, 2017. In that complaint, Plaintiff generally alleged that Defendant had attempted to defraud her using forged promissory notes, and a cancelled mortgage. *Compl.* at 2. Plaintiff sought damages under six causes of action: (1) "Breach of Written Contract;" (2) "Breach of Implied Covenant of Good Faith and Fair Dealing;" (3) Conversion; (4) "Invasion of Privacy — Misappropriation;" (5) "Invasion of Privacy — Intrusion;" and (6) "Fair Debt Collection Practices Act Violations." *Id.* at 5-11.

A few months after Plaintiff filed her complaint with this Court, Defendants moved to dismiss. *Reisenfeld Mot. to Dismiss*, ECF No. 15; *HSBC Mot. to Dismiss*, ECF No. 29. In addition to claiming that Plaintiff had failed to state a claim upon which relief may be granted, the Defendants argued that claim and issue preclusion, in addition to judicial estoppel barred Plaintiff's action. *Reisenfeld Mem. in Supp. of Mot. to Dismiss*, at 8-17; *HSBC Mem. in Supp. of Mot. to Dismiss*, at 4.

On December 12, 2017, Magistrate Judge Eifert issued her PF&R recommending, in relevant part, that this Court grant Defendants' Motions to Dismiss. With regard to Reisenfeld and Dawson's dismissal motion, Magistrate Judge Eifert found that Plaintiff's complaint failed to state

facts sufficient to support any of the claims alleged against them.[4] *PF&R*, at 13-15. Magistrate Judge Eifert explained that neither Reisenfeld, nor Dawson, had a contractual relationship with Plaintiff, ever exerted control over Plaintiff's property, or pursued a debt owed by Plaintiff. Additionally, although Plaintiff claims that someone forged her name, Magistrate Judge Eifert found that those allegations were too vague and conclusory to maintain a claim against either Reisenfeld or Dawson.

Turning to the allegations and claims against HSBC, Magistrate Judge Eifert found that *res judicata* barred Plaintiff's claims against HSBC. After examining the relevant standards for the application of claim and issue preclusion, Magistrate Judge Eifert recited the cavalcade of forums in which Plaintiff has litigated the same underlying issues against HSBC. *PF&R*, at 16. Additionally, Magistrate Judge Eifert provided that those "courts have considered 'the same transactional nucleus of facts' surrounding the Dublin House and mortgage lien, the same claims of fraud and forgery, and the same alleged illegal debt collection practices." *Id.* Further, a few of those courts have already issued final orders finding that *res judicata* precluded Plaintiff's claims. *Id.* Finding that Plaintiff's action stems from the same 2006 mortgage lien, and noting the "voluminous litigation instigated by Plaintiff," Magistrate Judge Eifert found the complaint barred.

---

[4]      Magistrate Judge Eifert points out that Plaintiff did not specify which claims she alleged against which Defendants. Therefore, Magistrate Judge Eifert assumed that Plaintiff made all the claims against each of the Defendants. *PF&R*, at 13. Having reviewed the complaint, the Court agrees with Magistrate Judge Eifert that it is unclear which claims are made against which Defendant. In asserting the claims, Plaintiff oscillates between singular and plural references to the party she has brought a cause of action against. *See e.g. Compl.*, at 5 (asserting in the Breach of Written Contract claim that "Defendants have failed . . ." but also providing that "Defendant's wrongful conduct" ). Due to this uncertainty, the Court construes the complaint liberally, in line with its obligations when reading a *pro se* filing. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). As such, the Court will presume that Plaintiff has brought every claim against each Defendant.

Plaintiff objects to Magistrate Judge Eifert's findings and recommendations. In addition to other strands of argument,[5] Plaintiff challenges the Magistrate Judge's conclusion that *res judicata* applies. Plaintiff contends that the facts relevant to this complaint did not arise until April 2017. *Pl.'s Obj. to PF&R*, at 3. Therefore, Plaintiff argues that *res judicata* could not bar her claims because the facts supporting the claim did not occur until last year. Plaintiff argues that she cannot be held to anticipate claims which were not ripe at the time of the other adjudications cited by Magistrate Judge Eifert. And, based upon this factual difference, Plaintiff claims *res judicata* should not bar her claims.

Plaintiff also challenges Magistrate Judge Eifert's, and necessarily this Court's, jurisdiction at the time she issued her PF&R. Plaintiff had sought in interlocutory appeal from an earlier Memorandum Opinion and Order by this Court. *Pl.'s Notice of Appeal*, ECF No. 38. That Memorandum Opinion and Order accepted and incorporated a PF&R issued by Magistrate Judge Eifert that granted HSBC's motion for leave to file a response and denied Plaintiff's motion for entry of default. *Mem. Op. & Order (Nov. 21, 2017)*, ECF No. 37. This Court issued that Memorandum Opinion and Order after the time for objection had lapsed, and no party had filed any objection to the PF&R during that time. *Id.*

Plaintiff filed her Notice of Appeal, striking many of the same thematic notes she has scattered throughout her pleadings before this Court. *See generally Pl.'s Notice of Appeal*. Ultimately, however, the Fourth Circuit rejected her appeal. *Cline v. HSBC Bank, USA, N.A.*, No. 17-2354, 711 Fed.Appx. 182, 183 (4th Cir. Feb. 16, 2018) (unpub. per curiam op.). The Fourth Circuit found that Plaintiff attempted to appeal from an order that was neither final, nor otherwise properly appealable. *Id.* As such, the court "dismissed the appeal for lack of jurisdiction." *Id.* The

---

[5]     *See supra* note 1 & *infra* note 7 & 8.

Fourth Circuit issued the Mandate, effectuating its dismissal judgment on March 12, 2018. *Mandate*, ECF No. 49.

However, because Plaintiff's Notice of Appeal was pending at the time that Magistrate Judge Eifert issued her PF&R, Plaintiff claims that Magistrate Judge Eifert acted without jurisdiction to do so. Even by the time Plaintiff had filed her objections, the Fourth Circuit had not yet acted upon the appeal attempt. As such, Plaintiff argues that the PF&R was erroneous and inappropriate.

While Plaintiff's appeal attempt was still pending, Reisenfeld and Dawson filed a Response to Objections. In that response, Reisenfeld and Dawson reiterate an analysis similar to that made by Magistrate Judge Eifert in her PF&R. *Reisenfeld Resp. to Pl.'s Obj.*, at 4-7. Centrally, Reisenfeld and Dawson argue that the complaint failed to provide sufficient facts to state viable claims against either of them. *Id.* Although Reisenfeld and Dawson felt compelled to respond to Plaintiff's objections, it does not appear that Magistrate Judge Eifert's conclusions regarding the claims against them are still at issue.

Plaintiff's objections address three main topics: perceived bias, *res judicata*, and lack of jurisdiction. Plaintiff does not appear to challenge Magistrate Judge Eifert's finding that Plaintiff's complaint fails to state any claim against Reisenfeld or Dawson. In fact, Plaintiff only mentions Reisenfeld once in her Objection. *Pl.'s Obj. to PF&R*, at 4. Plaintiff only asserts that "metadata showed" Reisenfeld improperly wrote "the [*In re*] *Dials* [bankruptcy] decision." *Id.* Although unclear to which "decision" Plaintiff refers, the Court notes the practice of parties submitting proposed orders is typical and accepted practice in certain circumstances. *Aiken Cty. v. BSP Div. of Encirotech Corp.*, 866 F.2d 661, 667 (4th Cir. 1989) (explaining the standard for adoption of party's proposed orders and finding the one at issue acceptable). Indeed, it appears Chief Judge

Volk directed HSBC to prepare a proposed order "providing, in greater detail, the relief sought." *In re Dials*, 575 B.R. at 151. Noting this permissible practice, the Court need not engage with Plaintiff's allegations regarding the preparation of any proposed orders in *In re Dials*.[6]

In light of this background, the Court finds that Magistrate Judge Eifert reached the correct conclusions regarding the disposition of this case. The Court takes seriously its obligation to fairly and objectively adjudicate *pro se* actions, and doing so with the requisite liberality of interpretation. *See Erickson*, 551 U.S. at 94. However, in this case, despite Plaintiff's consistent pleading that wrongdoing has taken place, the Court cannot permit this suit to continue. Plaintiff's completely inadequate assertions against Reisenfeld and Dawson, as well as her repetitive, multi-round bout against HSBC before a variety of courts, require that this action be dismissed.

## II.    Standard of Review

This Court conducts a *de novo* review of those portions of the magistrate judge's proposed findings and recommendations to which a party objects. 28 U.S.C. § 636(b)(1)(C) ("A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate."). The Court, however, is not required to review, under a *de novo* or any other standard, the factual or

---

[6]     Additionally, noting the lack of a stated objection against the recommended dismissal of the claims against Reisenfeld and Dawson, the Court adopts Magistrate Judge Eifert's findings and recommendations regarding Plaintiff's claims against Reisenfeld and Dawson. Further, the Court finds substantial support for finding that the Plaintiff's complaint, even when read with the liberal eye afforded to *pro se* filings, fails to allege sufficient facts to state a claim against Reisenfeld or Dawson. The complaint does not allege that a contractual relationship between Plaintiff and Reisenfeld or Dawson existed, that they exerted control over Plaintiff's property, that they had access to, or ability to tamper with, documents Plaintiff's alleged were forged, or that Reisenfeld or Dawson pursued any debt owed by Plaintiff. Accordingly, the claims against Reisenfeld and Dawson will be dismissed.

legal conclusions of the magistrate judge as to those portions of the findings or recommendations to which no objections are made. *Thomas v. Arn*, 474 U.S. 140, 150 (1985).[7]

To overcome a motion to dismiss under Federal Rule 12(b)(6), a complaint must state plausible claims. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546 (2007). This standard requires a plaintiff to set forth the "grounds" for an "entitle[ment] to relief" that is more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action. . . ." *Id.* at 555 (internal quotation marks and citations omitted). A complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). Facial plausibility exists when a claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted).

---

[7]     Plaintiff appears to contest the factual findings made by the Magistrate Judge. However, Plaintiff's objection consists largely of histrionic accusations about Magistrate Judge Eifert's motives. For example, Plaintiff suggests that Magistrate Judge Eifert sought to hide facts about this case due to her former employment with a law firm that at one point represented an entity that was relevant to the factual history of this case, but that is not a party to this suit. *Pl.'s Obj. to PF& R*, at 2-3.The Court finds this concern baseless. Frankly, the Court cannot condone such casual suggestions of bias or improper motives. Although the Court takes seriously its obligation to review all matters and arguments fully, objectively, and appropriately, Plaintiff's conspiratorial assertions are too far afield. Further, because Plaintiff merely appears to assert the falsity of Magistrate Judge Eifert's "boisterous 18 page rant," *Pl.'s Obj. to PF&R*, at 3, in passing and without a substantive basis, the Court considers Plaintiff's factual objections waived due to their inadequacy. *See TGIP, Inc. v. AT&T Corp.*, 512 F.Supp.2d 696, 712 (E.D. Tex. 2007) ("Courts have consistently held that inadequate briefing results in a waiver of a party's arguments." (internal quotation marks and citations omitted)).

However, even if Plaintiff had sufficiently supported and briefed her factual objections, the Court, having reviewed the record finds support for Magistrate Judge Eifert's factual findings. Accordingly, the Court adopts those factual findings. Likewise, finding support in the factual record and the applicable law, the Court adopts the legal conclusions of the Magistrate Judge to which no objections were made, and to the extent that they are not contradicted by this Memorandum Opinion and Order.

Accepting the factual allegations in the complaint as true, the allegations "must be enough to raise a right to relief above the speculative level . . . . " *Twombly*, 550 U.S. at 555 (citations omitted). If the allegations in the complaint, assuming their truth, do "not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id.* at 558 (internal quotation marks and citations omitted). "Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted). Additionally, a court must also "draw[ ] all reasonable factual inferences from those facts [alleged] in the plaintiff's favor . . . ." *Martin v. Duffy*, 858 F.3d 239, 248 (4th Cir. 2017) (internal quotation marks omitted) (quoting *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (internal citations omitted)). And in the case of a *pro se* filing, the Court should construe the pleading liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

### III.    Discussion

Plaintiff's remaining objections are two-fold: (1) Magistrate Judge Eifert, and this Court, lacked jurisdiction to issue PF&Rs while Plaintiff had a pending Notice of Appeal; and (2) Magistrate Judge Eifert incorrectly found that *res judicata* barred Plaintiff's claims because Magistrate Judge Eifert failed to consider that the complaint's allegations are based upon facts that occurred after any other proceeding, and therefore cannot be precluded.

As an initial matter, the Court must confront the issue of whether the Magistrate Judge, acting pursuant to the District Court's jurisdiction, was stripped of jurisdiction at the time she issued her PF&R. As noted previously, Plaintiff contends that upon the filing of her Notice of Appeal, the District Court, and Magistrate Judge, lost jurisdiction over the matter in favor of the

Fourth Circuit Court of Appeals. *Pl.'s Obj. to PF&R*, at 6 (citations omitted). Plaintiff correctly provides that "[a]s a general rule, 'a federal district court and a federal court of appeals should not attempt to assert jurisdiction over a case simultaneously.'" *Id.* (quoting *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982)). And, "the filing of a notice of appeal . . . confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Id.* (quoting *U.S. v. Harris*, No. 5:07CR22, 2007 WL 3348465, at *1 (N.D.W. Va. Nov. 7, 2007)) (internal quotation marks and citations omitted). However, in this instance, the Fourth Circuit never had jurisdiction, and, therefore, this Court never lost jurisdiction.

Where a party attempts to take an interlocutory appeal from a non-appealable order, jurisdiction does not transfer as usual. *See U.S. v. Harris*, No. 5:07CR22, 2007 WL 3348465, at *1 (N.D.W. Va. Nov. 7, 2007) (citing *United States v. DeFries*, 129 F.3d 1293, 1302-03 (D.C. Cir. 1997)); *see also Grand Jury Proceedings Under Seal v. U.S.*, 947 F.3d 1188, 1190 (4th Cir. 1991) ("The general rule is that the filing of a timely and *sufficient* notice of appeal immediately transfers jurisdiction of all matters relating to the appeal form the district court to the court of appeals." (emphasis added) (citations omitted)). Indeed, in this case, the Fourth Circuit confirmed that Plaintiff had filed a Notice of Appeal from a non-appealable interlocutory order. *Cline*, 711 Fed.Appx. at 183. Due to that, the Fourth Circuit lacked jurisdiction, and dismissed for that reason. *Id.* Therefore, the Court finds that jurisdiction never transferred to the appeals court, and the Magistrate Judge properly proceeded with the adjudication of the Defendants' Motions to Dismiss.

Turning to Plaintiff's second central objection, the Court must determine whether her claims against HSBC are precluded under the concept of *res judicata*. "Under *res judicata* principles, a prior judgment between the same parties can preclude subsequent litigation on those

matters actually and necessarily resolved in the first adjudication." *Covert v. LVNV Funding, LLC*, 779 F.3d 242, 246 (4th Cir. 2015) (quoting *In re Varat Enters., Inc.*, 81 F.3d 1310, 1314-15 (4th Cir. 1996)) (internal quotation marks omitted). A prior judgment can also preclude subsequent litigation between parties in privity with the parties who participated in the original adjudication. *Id.* (internal citation omitted). Parties are considered "in privity" when they "represent the same legal right in respect to the subject matter involved." *Martin v. Am. Bancorporation Ret. Plan*, 407 F.3d 643, 651 (4th Cir. 2005).

The general doctrine of *res judicata* encompasses two branches of distinct concepts, claim preclusion and issue preclusion. *Covert*, 779 F.3d at 246. "[C]laim preclusion bars later litigation of all claims that were actually adjudicated or that could have been adjudicated in an earlier action." *Id.* (internal citation omitted). Issue preclusion, on the other hand, "bars later litigation of legal and factual issues that were 'actually and necessarily determined' in an earlier action." *Id.* (internal citation omitted). In this instance, claim preclusion bars Plaintiff's action from continuing, making the analysis of issue preclusion unnecessary.

When applying *res judicata*, the reviewing court must apply the law under which the original judgment was entered.[8] *See Q Intern. Courier Inc. v. Smoak*, 441 F.3d 214, 218 (4th Cir.

---

[8]     In her Objection, Plaintiff contends that Magistrate Judge Eifert applied the *res judicata* law from the incorrect jurisdiction. Plaintiff claims that the Magistrate Judge should have applied Ohio *res judicata* principles, instead of those arising under federal law within the Fourth Circuit. *Pl.'s Obj. to PF&R*, at 4-5. Because Magistrate Judge Eifert found the judgment of the Ohio Court of Common Pleas to preclude Plaintiff's action before this Court, the Court agrees with Plaintiff's contention. Because of that, the Court applies the *res judicata* elements under Ohio law. However, because Ohio *res judicata* principles and those used in the Fourth Circuit are substantially the same, the Court does not believe Magistrate Judge Eifert's application of Fourth Circuit principles affected the correctness of her finding. *See Johnson's Island, Inc. v. Bd. of Twp. Tr.*, 431 N.E.2d 672, 674 (Ohio 1982); *compare Sheldon v. Kettering Health Network*, 816 F.3d 399, 415 (6th Cir. 2016) (providing the test for *res judicata* claim preclusion under Ohio law) *with Meekins v. United Transp. Union*, 946 F.2d 1054, 1057-58 (4th Cir. 1991) (explaining the same elements for *res judicata* claim preclusion under the Fourth Circuit's approach).

2006) (applying state law of *res judicata* because the federal court that issued the previous judgment sat in diversity, under Virginia law)*; see also Heckert v. Dotson*, 272 F.3d 253, 257 (4th Cir. 2001) ("The Supreme Court and our cases have made clear that a federal court must 'refer to the preclusion law of the State in which the judgment was rendered.'" (quoting *Marrese v. Am. Acad. Of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985))). Because an Ohio state court issued the original judgment emanating from the 2007 Foreclosure Action, the Court will apply Ohio *res judicata* principles to that judgment.[9]

Ohio law provides a four-element test for determining whether claim preclusion will apply and prevent a subsequent action from going forward. "There must be: (1) a prior final, valid decision on the merits by a court of competent jurisdiction; (2) a second action involving the same parties, or their privies, as the first; (3) a second action raising claims that were or could have been litigated in the first action; and (4) a second action arising out of the transaction or occurrence that was the subject matter of the previous action." *Sheldon*, 816 F.3d at 415 (quoting *Hapgood v. City of Warren*, 127 F.3d 490, 493 (6th Cir 1997)). Applying this standard, the Court finds that claim preclusion bars Plaintiff from continuing.

Reviewing the first three of Plaintiff's claims, the four elements for claim preclusion are met. Those claims – breach of written contract, breach of implied covenant of good faith and fair dealing, and conversion – all involved the same parties and transactions presented before the Ohio Court of Common Pleas in the 2007 Foreclosure Action. *Ex. A - C to Reisenfeld Mot. to Dismiss*,

---

[9]     Due to the panoply of jurisdictions that have both reviewed and issued final orders on the claims arising out of the 2006 mortgage, and the subsequent proceedings regarding that mortgage between Cline and HSBC, the Court could apply the *res judicata* principles from a variety of jurisdictions. However, because this Court finds that the Ohio courts have, or could have, adjudicated completely the matters before this court, there is no need to analyze the issue under each potentially applicable law.

at 1-19. At the heart of Plaintiff's claims are allegations that HSBC failed to perform, or acted in bad faith, under the promissory note, while Plaintiff complied with its terms, and that because of this, HSBC's attempt to take possession of the Dublin House through foreclosure proceedings was unlawful. *See Compl.*, at 5-7. However, the Ohio Court of Common Pleas rendered final judgment regarding these issues. The Ohio court found that Plaintiff failed to comply with the promissory note, HSBC had complied, and HSBC was entitled to foreclose and take possession of the Dublin House. Simply, the Ohio court addressed Plaintiff's first three claims roughly a decade ago. *Id.* And to the extent that Plaintiff did not state these claims in the same fashion, she clearly could have brought them. Therefore, preclusion of the first three claims is proper. *See Covert*, 779 F.3d at 246-47 (explaining that "claims are part of the same cause of action [, and thus precluded,] when they arise out of the same transaction or series of transaction or the same core of operative facts" (internal quotation marks and citations omitted)).

With regard to the other three claims, the Court similarly finds that they arise out of the same series of transactions that Plaintiff has litigated previously. A handful of venues have entertained Plaintiff's calls of forgery and fraud. *See supra* pp. 2-11; *Ex. F. to Reisenfeld's Mot. to Dismiss,* ECF No. 15-1, at 174. Additionally, at least one other jurisdiction has heard, and rejected, Plaintiff's claim under the Fair Debt Collection Practices Act. *See Cline*, 2013 WL 6687257, at *6. Therefore, the Court finds that, where this action involves the same parties, and same causes of actions arising out of the same set of transactions, which have been resolved by final judgments, Plaintiff's claims are precluded.

However, Plaintiff beseeches the Court to recognize that the relevant facts of this claim occurred after the adjudications in the prior suits. In her Objection, Plaintiff stresses that the facts underlying this complaint occurred in April of 2017. *Pl.'s Obj. to PF&R*, at 3-4. Only upon the

production of the allegedly forged documents before Chief Judge Volk in Dial's bankruptcy action in April 2017, did Plaintiff's causes of action supposedly accrue. *Id.* at 3-5. According to Plaintiff, the "forgery . . . [had] been unseen by every court until April 2017." *Id.* at 3. Plaintiff contends that, because this claim arose after the other courts issued their final orders, *res judicata* cannot apply. Plaintiff's argument is unavailing for multiple reasons.

Initially, Plaintiff's complaint does not reflect the April 2017 timeframe that she emphasizes in her Objection. *Compare Compl.*, at 2-8 *with Pl.'s Obj. to PF&R*, at 3-5. Plaintiff only provides that at some unspecified time, her name/signature was forged. *See generally Compl.* However, because Plaintiff provides that "all of the events giving rise to Plaintiffs'[sic] claims occurred in this judicial district and local Bankruptcy Court in Charleston, WV," *Compl.*, at 3, the Court will infer the April 2017 date from Plaintiff's Objection. *Pl.'s Obj. to PF&R*, at 3-5. The Court does this with an eye to its obligation to read liberally the filings of *pro se* litigants.

Secondly, even giving Plaintiff leeway in her pleading, the Court cannot concur in Plaintiff's assessment that the forgery had been completely undiscovered before April 2017. Indeed, Plaintiff has used this same argument in her other cases brought against HSCB. In one of the proceedings against HSBC before the Court of Common Pleas for Franklin County, Ohio, Plaintiff filed a Motion to Clarify the Court's September 10th, 2015 Order. In that motion, Plaintiff asserted that HSBC produced documents to the court that contained "forgeries of her signature, date, and bogus endorsement stamp that did not exist for more than eight years." *Ex. F. to Reisenfeld's Mot. to Dismiss,* at 174. Based upon this, Plaintiff's plea that this has "never before been seen" is a bark without a bite. At first blush, the assertion presents a valid concern, however,

upon a cursory inspection of Plaintiff's previous allegations, her comment reflects a tactical, stylistic flourish.[10]

Further, although later factual development can give rise to new, unresolved claims between parties who have litigated similar subject matters in the past, this case does not present such a scenario. *See Meekins*, 946 F.2d at 1057-58 (providing that "*res judicata* does not bar claims that do not exist at the time of the prior litigation" and finding that a claim did not exist at the time of a previous suit and was therefore not barred). Even allegations covering different time periods may still be subject to *res judicata* applicability if there is substantial overlap. *Pram Nguyen ex rel. U.S. v. City of Cleveland*, 534 Fed.Appx. 445, 449 (6th Cir. 2013) (unpub.) (citing to Restatement (Second) of Judgements § 27 cmt. c (1982)) (providing that preclusion may be "plainly appropriate" even in instances where different time periods are alleged, when "the overlap is so substantial"). The Court believes that this is such an instance. Plaintiff's allegations, even if differing with respect to the date of "discovery" so substantially overlap that they cannot escape the intended finality accorded by *res judicata* principles.

Additionally, the Court cannot ignore that Plaintiff has prompted the repeated production of the allegedly forged documents. By continually filing her legal actions against HSBC, challenging the mortgage lien, assignment, and foreclosure action, among other things, Plaintiff places HSBC in a position to respond to the allegations. At this point, HSBC's response consists of pleading the affirmative defense of *res judicata*, and generally producing the documents that it believes support its position in the underlying litigation. These documents include the mortgage lien, with its noted assignments. If Plaintiff is permitted to defeat *res judicata* application by

---

[10]     When considering a motion to dismiss premised upon res judicata, "a court may take judicial notice of facts from a prior judicial proceeding." *Andrews v. Daw*, 201 F.3d 521, 524 n.1 (4th Cir. 2000).

claiming that each presentation of the allegedly forged document constitutes a unique and separate claim, than the judiciary may very well have some iteration of "*Cline v. HSBC*" on their dockets for decades to come. At some point, the courts must draw a line of demarcation to nip the potentially infinite fractal in the bud. The Court believes now is the time for line drawing.

### IV. Conclusion

Based upon the forgoing analysis, the Court **GRANTS** Defendants' Motions to Dismiss (ECF Nos. 15 & 29). Additionally, having found support in the record for the remainder of Magistrate Judge Eifert's PF&R, except where noted otherwise, the Court **ADOPTS** the balance of the PF&R, to the extent that it is not contradicted by this Memorandum Opinion and Order. As such, the Court **DENIES** Plaintiff's Motion to Strike (ECF No. 33), and **DISMISSES** this case, with prejudice, and **DIRECTS** the Clerk to remove it from the docket of the Court.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

Enter:     March 28, 2018

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE